J-S19019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK LEWIS WETZEL | : | |
| | : | |
| Appellant | : | No. 1595 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 17, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002449-2020

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.[*]

MEMORANDUM BY BECK, J.:                          **FILED: JULY 2, 2024**

Mark Lewis Wetzel ("Wetzel") appeals from the judgment of sentence imposed by the Court of Common Pleas of York County (the "trial court") following his conviction of harassment.[1]  On appeal, Wetzel challenges the sufficiency of the evidence to support his conviction.  After careful review, we affirm.

Rebecca Gominger ("Gominger"), Wetzel's estranged wife, had an active Protection from Abuse ("PFA") order against Wetzel following their separation.[2]  Of relevance here, the PFA order limited Wetzel's contact with

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2709(a)(7).

[2] Notably, the orphans' court extended the PFA order numerous times due to various violations by Wetzel, and is effective until November 19, 2026.

Gominger to text or email, and he could only ask about the health and welfare of the parties' minor daughter, T.G ("Child"). On May 20, 2020, Gominger contacted the York City Police Department stating that Wetzel was harassing her by leaving repeated voicemails.

The Commonwealth charged Wetzel with stalking and harassment. The case proceeded to trial, following which the jury found Wetzel not guilty of stalking and guilty of harassment. On May 13, 2022, the trial court sentenced Wetzel to twelve months of probation.

Wetzel filed a timely appeal. Both Wetzel and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. He raises one issue for our review: "Whether the Commonwealth presented insufficient evidence [] Wetzel intended to annoy, alarm, or harass the Complainant where the subject of the communications clearly evinced an uncontradicted intention to discuss custody of their daughter rather than to harass." Wetzel's Brief at 4.

Our court's standard of review for a challenge to the sufficiency of the evidence is well settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn. Therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

***Commonwealth v. Juray***, 275 A.3d 1037, 1042 (Pa. Super. 2022) (quotation marks and citations omitted).

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another person, the person … communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6)."[3] 18 Pa.C.S. § 2709(a)(7). The statute defines "communicates" as "[c]onvey[ing] a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission." *Id.* § 2709(f).

Wetzel argues the evidence was insufficient to sustain his harassment conviction because the Commonwealth failed to prove that he intended to annoy, alarm, or harass Gominger. Wetzel's Brief at 9. According to Wetzel, there was no evidence presented at trial to establish that his desire for visitation rights with Child was enough to form an intent to annoy, alarm, or harass Gominger. *Id.* Wetzel adds that the repeated phone calls to discuss his visitation rights does not demonstrate the required intent. *Id.* at 12, 14-15, 16. In addition, Wetzel notes that none of the voicemails contained obscenities or threats. *Id.* at 13. Wetzel also asserts that a violation of the

---

[3] Paragraphs (4), (5), and (6) penalizes one who "(4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures; (5) communicates repeatedly in an anonymous manner; (6) communicates repeatedly at extremely inconvenient hours[.]" 18 Pa.C.S. § 2709(a)(4), (5), (6).

PFA by contacting Gominger does not render the communications annoying, harassing, or alarming. *Id.* at 15.

Our review of the record reveals that Gominger had an active PFA against Wetzel at the time of the incident, which limited his contact with Gominger to texts or emails concerning the health and welfare of their daughter. N.T., 8/22-23/2022, at 83-84. Wetzel was not allowed to have any other contact with her. *Id.* Gominger had full physical and legal custody of their daughter, with Wetzel having supervised visitations, subject to the completion of certain programs, which he had not completed. *Id.* at 85-86.

Gominger testified that Wetzel contacted her via texts that were not about their daughter, repeatedly called her, and eventually began leaving voicemail messages. *Id.* at 85. Gominger indicated that the calls were made throughout the night and some were after midnight. *Id.* at 86. Gominger further stated that Wetzel would sometimes "call and then hang up and then call again and then hang up and then call again." *Id.* Gominger could tell that it was Wetzel making the calls as she could recognize his voice and his number was saved in her phone. *Id.* at 87. Gominger indicated that she asked Wetzel to stop contacting her, but he nevertheless persisted. *Id.* at 92. On May 20, 2020, Wetzel called Gominger stating that he wanted her to drop their daughter off at a certain time and place at their family home where he was residing. *Id.* at 85; *see also id.* at 87-88 (noting Wetzel left multiple voicemails on May 19, 2020, and May 20, 2020, which Gominger turned over

to the police). Gominger testified that she was scared to come home, scared for Child and that it was frustrating, sad, disheartening, and not pleasant. *Id.*

Viewing the evidence in the light most favorable to the Commonwealth, the record supports a finding that Wetzel continued to contact Gominger despite the fact she was clearly unresponsive to his calls and asked him to cease such contacts. The jury was free to weigh the evidence and conclude that Wetzel was not making contact with Gominger for the legitimate purpose of asking about the parties' child or seeking visitation, but with the intent to harass, annoy, or alarm her. *See Juray*, 275 A.3d at 1046 (noting that jury is free to believe all, part, or none of the evidence); *see also Commonwealth v. Papp*, 305 A.3d 62, 83 (Pa. Super. 2023) (finding evidence sufficient to support harassment conviction under section 2709(a)(7) and evidence an intent to harass, alarm, or annoy, where appellant repeatedly contacted victim despite victim's request to stop, the messages were not sent for any legitimate purpose, and the messages denigrated the victim). We therefore conclude that the evidence was sufficient to support Wetzel's harassment conviction.

Judgment of sentence affirmed.

J-S19019-24

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>07/02/2024</u>